**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KENNETH STURDIVANT | No. 3:12-cr-74 (SRU) |

**ORDER**

On March 10, 2014, Sturdivant pleaded guilty (pursuant to a plea agreement) to Count One of a superseding indictment charging him with conspiracy to distribute, and to possess with intent to distribute, 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846.  *See* Superseding Indictment, Doc. No. 697; Min. Entry, Doc. No. 798; Plea Agreement, Doc. No. 797.[1]  On December 16, 2014, District Judge Warren W. Eginton held a sentencing hearing and sentenced Sturdivant to 10 years' imprisonment (the mandatory minimum) and five years' supervised release.  *See* Min. Entry, Doc. No. 1076; Judgment, Doc. No. 1077.  Sturdivant has been continuously incarcerated since his arrest in this case, which was on March 28, 2012.  *See* PSR, Doc. No. 1010, at ¶ 2.  Sturdivant is currently housed at the Federal Correctional Institution, Allenwood Medium ("Allenwood Medium FCI").  *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Nov. 23, 2020). Sturdivant's scheduled release date is June 9, 2021.  *See id.*[2]  Sturdivant has thus served over eight years in prison and, accounting for good time credit, he has served about 90 percent of his sentence.

---

[1] Sturdivant pleaded guilty in front of visiting Magistrate Judge Leslie G. Foschio.  *See* Min. Entry, Doc. No. 798.  Sturdivant also stipulated that his relevant and reasonably foreseeable offense conduct involved at least 280 grams but less than 840 grams of cocaine base.  *See* Plea Agreement, Doc. No. 797, at 3.

[2] Sturdivant reports that he is eligible for placement in a halfway house in January 2021.  *See* Mem. of Law in Supp. Mot. for Release, Doc. No. 1342-1, at 1 n.1.

On August 30, 2020, Sturdivant (through counsel) filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act. *See* Mot. for Release, Doc. No. 1342. In that motion, Sturdivant asks that I "grant compassionate release and reduce his sentence to time served." Mem. of Law in Supp. Mot. for Release ("Sturdivant's Mem. of Law"), Doc. No. 1342-1, at 1. More specifically, Sturdivant seeks release based on the threat of COVID-19 in prisons, his rehabilitation in prison, and his solid release plan. *See id.* at 1–4. Although Sturdivant acknowledges that he "does not have any particular health issues," *id.* at 3, Sturdivant filed his medical records under seal. *See* Mot. to Seal, Doc. No. 1343; Sturdivant's Medical Records, Doc. No. 1344. On September 2, 2020, the government filed an opposition. *See* Gov't Opp'n, Doc. No. 1345.

The government argues that Sturdivant has not established "extraordinary and compelling" reasons warranting his release because the generalized threat of COVID-19 does not amount to such a reason, and Sturdivant admits that he has no particular health condition that puts him at a higher risk of serious illness should he contract COVID-19. *See id.* at 1–4. Further, the government argues that even if extraordinary and compelling reasons did warrant Sturdivant's release, it would still oppose Sturdivant's release "based on the need to protect the public, and the need for the sentence to reflect just punishment and promote respect for the law." *Id.* at 4–5.

For the following reasons, I **grant** Sturdivant's motion for release.

**I.      Standard of Review**

The First Step Act of 2018 (the "FSA") amended the language of section 3582(c)(1)(A). Before the FSA, only the Director of the Bureau of Prisons (the "BOP") could make a motion for the court to reduce a defendant's sentence based on extraordinary and compelling reasons. It is

widely acknowledged that the BOP fell short in its gatekeeper role and that, as a result, too few inmates were granted compassionate release. *See, e.g.*, U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons' Compassionate Release Program* i (April 2013), https://oig.justice.gov/reports/2013/e1306.pdf ("[W]e found that the existing BOP compassionate release program has been poorly managed and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally ill inmates dying before their requests were decided."); Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 105–06 (2019); William W. Berry III, *Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Congress passed the FSA against that backdrop. The FSA altered section 3582(c)(1)(A), in part, to increase the use of compassionate release. *See* 164 Cong. Rec. H10358 (daily ed. Dec. 20, 2018) (titling changes to section 3582(c)(1)(A) as "Increasing the Use and Transparency of Compassionate Release"). In particular, the FSA amended section 3582(c)(1)(A) to allow a defendant him- or herself to bring a motion for compassionate release. Section 3582(c) now reads, in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case –
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

>considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>>(i) extraordinary and compelling reasons warrant such a reduction; . . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Until recently, I (and many other district courts around the country) interpreted the "applicable policy statement[] issued by the Sentencing Commission" to be U.S.S.G. § 1B1.13. *See, e.g.*, *United States v. Almontes*, 2020 WL 1812713, at *2 (D. Conn. Apr. 9, 2020). Section 1B1.13 reads, in relevant part:

>Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>(1)
>>(A) Extraordinary and compelling reasons warrant the reduction; or
>>
>>(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Two application notes to section 1B1.13 further elucidate the meaning of "extraordinary and compelling reasons." Application note three provides, simply, that rehabilitation of a defendant "is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3 (citing 28 U.S.C. § 994(t)). Application note one sets forth three specific examples of "extraordinary and compelling reasons" and also one catch-all provision. The first example explains that an inmate's medical condition rises to the level of an

4

extraordinary and compelling reason when the inmate is suffering from a terminal illness or some other serious condition that "substantially diminishes" that inmate's ability to provide self-care within the prison.  U.S.S.G. § 1B1.13 cmt. n.1(A).  The other two specific examples in application note one regard defendants over the age of 65 (U.S.S.G. § 1B1.13 cmt. n.1(B)) and situations in which an inmate may be needed to care for his children or his spouse/partner (U.S.S.G. § 1B1.13 cmt. n.1(C)).  *See id.*  The catch-all provision, titled "Other Reasons," provides that extraordinary and compelling reasons also exist when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission has not amended section 1B1.13 since Congress passed the FSA.  Indeed, it could not because a quorum of the Sentencing Commission still does not exist.  As a result, some anachronisms within section 1B1.13 are in tension with the FSA.  In particular, two clauses in section 1B1.13—including the catch-all provision at U.S.S.G. § 1B1.13 cmt. n.1(D)—still require that the Director of the BOP be the one to bring a motion for relief under section 3582(c)(1)(A).  Of course, though, the FSA altered section 3582(c)(1)(A) directly and eliminated that requirement by allowing a defendant him- or herself to bring such a motion under certain circumstances.  In part for that reason, the Second Circuit has recently held that section 1B1.13 is *not applicable* to compassionate release motions brought by defendants themselves.  *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  Because in this case Sturdivant himself made a motion for compassionate release, I may "consider the full slate of extraordinary and compelling reasons," and nothing in the "now-outdated version" of section 1B1.13 limits my discretion.  *Id.* at 237.

In granting motions for reductions in sentence under section 3582(c)(1)(A) that are based on the threat posed by COVID-19, courts within this circuit and across the country have concluded that "extraordinary and compelling" reasons for release may exist when an incarcerated defendant suffers from health conditions or other infirmities that make him particularly susceptible to serious complications should he contract COVID-19.  *See, e.g.*, *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020).

But courts have focused on other factors, too.  For instance, numerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an "extraordinary and compelling" reason to grant an inmate's motion for compassionate release.  *See, e.g.*, *United States v. Wooten*, 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020) (releasing prisoner who had served about 90 percent of his sentence); *United States v. Woodward*, No. 3:11-cr-177, Order, Doc. No. 35, at 9–10 (releasing prisoner who had served about 80 percent of his sentence); *United States v. O'Neil*, 464 F. Supp. 3d 1026, 1036 (S.D. Iowa 2020) (releasing prisoner with projected release date in 2023 who had served about 73 percent of his sentence); *United States v. Rivera*, 2020 WL 3186539, at *6 (D. Conn. June 15, 2020) (releasing inmate with about one year (ten percent) of his sentence remaining); *United States v. Jepsen*, 451 F. Supp. 3d 242, 246 (D. Conn. 2020); *United States v. Campagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020).  Given the threat of COVID-19, when a defendant has a small fraction of his sentence remaining, "[t]he benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."  *Perez*, 451 F. Supp. 3d at 294.

Further, several courts have noted that an ongoing and current outbreak at an inmate's prison facility can help contribute to "extraordinary and compelling" reasons warranting that inmate's release. *See, e.g.*, *United States v. Park*, 456 F. Supp. 3d 557, 561 (S.D.N.Y. 2020) ("The Court's concern with Ms. Park's health during this time is greatly exacerbated by her place of incarceration."); *United States v. Quintanilla*, 2020 WL 5593203, at *3 (N.D. Ind. Sept. 17, 2020) (noting that a prisoner's "showing that his particular institution is facing a serious outbreak of COVID-19 infections" is one factor that helps establish "extraordinary and compelling reasons" warranting a reduction in sentence) (cleaned up).[3]

The defendant bears the burden of proving that he is entitled to a sentence reduction. *See United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020). Courts "have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Jones*, 2020 WL 2782395, at *2 (D. Conn. May 29, 2020) (quoting *United States v. Tagliaferri*, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019)) (cleaned up). Indeed, section 3582(c)(1)(A) grants a district court permissive authority to reduce an inmate's sentence under certain conditions. *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . *may* reduce the term of imprisonment . . . ."). A court may not reduce a term of imprisonment without "considering the factors set forth in section 3553(a) to the extent that they are applicable." *Id.*; *see also United States v. Torres*, 464 F. Supp. 3d 651, 658 (S.D.N.Y. 2020) (explaining that courts must consider section 3553(a) factors before granting a sentence reduction pursuant to section 3582(c)(1)(A)).

---

[3] Similarly, many courts rely on the *absence* of an outbreak at an inmate's particular institution in holding that no extraordinary and compelling reasons warrant a reduction in that inmate's sentence. *See, e.g.*, *United States v. Bolanos*, 2020 WL 6684659, at *2 (E.D. Cal. Nov. 12, 2020) (denying motion for release based, in part, on fact that inmate "is in a prison that has no active cases of Covid 19"); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."). That reasoning also acknowledges that the status of a COVID-19 outbreak at a particular institution can help constitute "extraordinary and compelling reasons" warranting a reduction in an inmate's sentence.

7

## II. Discussion

### A. Background

In the summer of 2011, the FBI began investigating "suspected crack distribution and associated violent offenses occurring in the Hill section of New Haven." PSR, Doc. No. 1010, at ¶ 8. That investigation revealed that Sturdivant was involved in a large drug-dealing conspiracy. Sturdivant and 19 other co-defendants were indicted for their roles in that conspiracy. *See id.* at ¶ 3. Sturdivant "sought and arranged for bulk quantities of cocaine" to be delivered to another co-conspirator (Donald Ogman), and Sturdivant "could reasonably foresee" that Ogman cooked that cocaine into crack cocaine. *See id.* at ¶ 12. Sturdivant also possessed a firearm during the conspiracy. *See id.*

### B. Parties' Arguments[4]

Sturdivant argues that "his incarceration at FCI Allenwood during the COVID-19 pandemic places him at grave risk of serious illness and potential death should he contract the virus." Mot. for Release, Doc. No. 1342, at 1. Sturdivant argues that COVID-19 "has created a crisis at all BOP facilities, including FCI Allenwood." Sturdivant's Mem. of Law, Doc. No. 1342-1, at 1. Although Sturdivant concedes that he "does not have any particular health issues," Sturdivant argues that "as an inmate at FCI Allenwood he faces a real and substantial risk of contracting the virus." *Id.* at 3. At the time Sturdivant submitted his brief, Allenwood Medium FCI apparently had three positive cases (all staff). *See id.* at 4. Now at Allenwood Medium FCI, the situation is far worse: There are 37 positive cases (35 inmates). *See COVID-19*

---

[4] As the parties implicitly acknowledge, Sturdivant has satisfied section 3582(c)(1)(A)'s exhaustion requirement. *See* Sturdivant's Mem. of Law, Doc. No. 1342-1, at 2; Sturdivant's Compassionate Release Request, Doc. No. 1342-2; BOP's Reply, Doc. No. 1342-3; Gov't Opp'n, Doc. No. 1345, at 2 (acknowledging that Sturdivant requested compassionate release on June 19, 2020, which the Warden at Allenwood Medium FCI denied on July 8, 2020).

*Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Nov. 23, 2020).

Sturdivant also argues that his rehabilitation while in prison supports his early release. Sturdivant reports that he has "participat[ed] in available rehabilitative opportunities." Sturdivant's Mem. of Law, Doc. No. 1342-1, at 2; *see also* BOP Summary Reentry Plan, Doc. No. 1344-2, at 1–2 (listing education courses that Sturdivant has completed). Sturdivant explains that he has "participated in an anger management course and the Security Risk Group program" and that he has "received his GED and plans to attend college upon his release." Sturdivant's Mem. of Law, Doc. No. 1342-1, at 3. Sturdivant points out that he has worked in Correctional Services since October 2019 and "receives satisfactory work evaluations." BOP Summary Reentry Plan, Doc. No. 1344-2, at 1; Sturdivant's Mem. of Law, Doc. No. 1342-1, at 2. Sturdivant admits that he "has had some disciplinary incidents while in BOP custody," but he claims that none of those incidents "involved violence or represents a major infraction." Sturdivant's Mem. of Law, Doc. No. 1342-1, at 2. Sturdivant specifically attempts to explain an April 2020 incident regarding unauthorized use of a phone by explaining that the incident "related to Mr. Sturdivant's desperation to contact his family during a time when loved ones were sick." *Id.* at 2 n.2.

Finally, Sturdivant assures me that he has a solid release plan in place that will help ensure his successful reintegration into society. Sturdivant reports that he "plans to live with his fiancé," who "has lived in her home in New Haven, Connecticut since 2015." *Id.* at 3. Sturdivant and his fiancé have "been together since they were teenagers." *Id.* Sturdivant has a now-teenage son with his fiancé. *See id.*[5] Sturdivant is "committed to his fiancé and his son,

---

[5] Sturdivant also apparently has a now-teenage daughter from another relationship, but Sturdivant does not discuss his relationship with that daughter or her mother. *See* PSR, Doc. No. 1010, at ¶ 43.

9

and has maintained contact with them throughout the years." *Id.* Sturdivant's mother, who "has been a stabilizing force in her son's life," lives near Sturdivant's fiancé and reports that she will help "support [her son] in his transition into the community." *Id.* Because Sturdivant "views his mother as an inspiration and role model," Sturdivant will "rely on her as a resource as he furthers his education and finds employment." *Id.*[6] Sturdivant concludes that, should he be released, he will have "a stable place to live with a family who has consistently been by his side." *Id.* at 4.

The government takes a different view. The government argues that Sturdivant has not presented "extraordinary and compelling" reasons warranting his release. Sturdivant does not have a medical condition that puts him at a significant risk of serious illness should he contract COVID-19. And at the time the government submitted its opposition, Allenwood Medium FCI had no COVID-19 outbreak. *See* Gov't Opp'n, Doc. No. 1345, at 3–4 & n.2. (Of course, now that argument is badly outdated because Allenwood Medium FCI is suffering from a significant COVID-19 outbreak.) Along the same lines, the government argues that "[t]he simple risk of the coronavirus pandemic in an institutional environment is not an extraordinary or compelling reason warranting release." *United States v. Leigh-James*, 2020 WL 4003566, at *7 (July 15, 2020) (quoting *United States v. Adams*, 2020 WL 3026458, at *3 (D. Conn. June 4, 2020)) (cleaned up). (Again, that argument is now outdated with respect to Allenwood Medium FCI.) In the government's view, then, Sturdivant has not established "extraordinary and compelling" reasons.

Even if Sturdivant had established "extraordinary and compelling" reasons warranting his release, the government would still oppose Sturdivant's release "based on the need to protect the public, and the need for the sentence to reflect just punishment and promote respect for the law."

---

[6] The PSR also documents the strong bond between Sturdivant and his mother. *See* PSR, Doc. No. 1010, at ¶¶ 39–40.

Gov't Opp'n, Doc. No. 1345, at 4–5. The government notes the seriousness of Sturdivant's criminal conduct in this case. *See id.* at 5. The government also emphasizes Sturdivant's conduct as an inmate, which the government characterizes as "less than stellar." *Id.* According to the BOP, Sturdivant "has received multiple incident reports in the last year" and his "institutional behavior has been deemed poor." *Id.* (quoting BOP Summary Reentry Plan, Doc. No. 1344-2, at 2). The government points out that Sturdivant's deceptive use of a phone in April 2020 resulted in a loss of 30 days of good time credit, 60 days in segregation, and loss of telephone privileges for six months. *See id.* In the government's view, "[s]uch misconduct reflect[s] the continued need for incarceration to deter Sturdivant and protect the public." *Id.* at 6.

  C. <u>I Will Reduce Sturdivant's Sentence to Time Served.</u>

I will reduce Sturdivant's sentence because "extraordinary and compelling" reasons warrant his release. In addition, reducing Sturdivant's sentence to time served comports with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

   a. Extraordinary and Compelling Reasons

Although it is a close call, I hold that "extraordinary and compelling" reasons warrant reducing Sturdivant's sentence to time served. It is true that, in the normal course, courts considering an inmate's motion for release based on the COVID-19 pandemic focus on whether that inmate suffers from health conditions or other infirmities that make him particularly susceptible to serious complications should he contract COVID-19. *See, e.g.*, *Colvin*, 451 F. Supp. 3d at 241. The parties agree that Sturdivant has no such condition. Today, Sturdivant is 35 years old and generally healthy.[7] Still, the Second Circuit has recently emphasized that, when

---

[7] Sturdivant's medical records also confirm that he is generally healthy. *See, e.g.*, Sturdivant's Medical Records, Doc. No. 1344, at 9 (noting, on Feb. 23, 2019, that Sturdivant "takes no medications" and "has no

11

a defendant himself brings a motion for compassionate release, district courts are free to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them . . . ." *Brooker*, 976 F.3d at 237.  I hold that, in this case, two considerations amount to "extraordinary and compelling" reasons warranting Sturdivant's immediate release.

The first is the fact that Sturdivant is so near the end of his carceral sentence.  As discussed above, Sturdivant will be released in less than seven months—on June 9, 2021.  And Sturdivant reports that he is eligible to move to a halfway house in less than two months—in January 2021.  Sturdivant has served over 90 percent of his sentence.  As noted above, numerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an "extraordinary and compelling" reason to grant that inmate's motion for compassionate release.  *See, e.g.*, *O'Neil*, 464 F. Supp. 3d at 1036; *Rivera*, 2020 WL 3186539, at *6; *Jepsen*, 451 F. Supp. 3d at 246; *Campagna*, 2020 WL 1489829, at *3; *Perez*, 451 F. Supp. 3d at 294.  That is because, given the threat of COVID-19, when a defendant has a small fraction of his sentence remaining, "[t]he benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."  *Perez*, 451 F. Supp. 3d at 294.  Indeed, in granting several motions for compassionate release, I have noted that I agree with those courts.  *See Wooten*, 2020 WL 6119321, at *8; *Woodward*, No. 3:11-cr-177, Order, Doc. No. 35, at 9–10.  This consideration weighs heavily in Sturdivant's favor.

Closely related is the fact that Allenwood Medium FCI is currently experiencing a significant COVID-19 outbreak.  Today, Allenwood Medium FCI has 37 positive cases (35

---

respiratory, cardiac, or other health conditions . . . ").  Sturdivant was also healthy at the time of his PSR in late 2014.  *See* PSR, Doc. No. 1010, at ¶ 46 ("Mr. Sturdivant described his present health as 'good' and reported no recurring health issues.  He is not on any prescription medications at the present time.").

inmates), 116 inmates who have recovered, and 12 staff who have recovered. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Nov. 23, 2020). As noted above, courts routinely consider the status of COVID-19 infections at the inmate's particular institution in determining whether extraordinary and compelling reasons warrant reducing an inmate's sentence. The COVID-19 outbreak at Allenwood Medium FCI is significant, and it is certainly possible that the outbreak will quickly worsen. *Cf. United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prisons are powder kegs for infection.").

Thus, on the particular facts of this case, although it is a close call, I hold that Sturdivant has established that "extraordinary and compelling reasons" warrant a reduction in his sentence to time served.

### b. Section 3553(a) Factors

Reducing Sturdivant's sentence to the time he has already served also results in a sentence sufficient to achieve the purposes of sentencing. Pursuant to section 3553(a), I must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). I also must consider other factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. *See id.* § 3553(a)(1).

In my view, a sentence of the time that Sturdivant has already served is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *See id.* § 3553(a)(2). Sturdivant has served nearly the entirety of a mandatory minimum, decade-

long sentence for a crack cocaine offense.[8] For the same reason, the time that Sturdivant has already served also affords adequate general deterrence to others who would also sell crack cocaine. *See id.* A sentence of time served also affords Sturdivant adequate specific deterrence. The marginal (deterrent) utility of the remaining half-year on Sturdivant's sentence is small, particularly considering that Sturdivant will spend the next five years on supervised release. Should Sturdivant violate the terms of that release, he will face the possibility of incarceration longer than the time currently remaining in his sentence.

Although the parties have different views of Sturdivant's rehabilitation, the important point is that—due to the restrictive prison measures necessary to contain COVID-19—Sturdivant will not have the chance for much further meaningful rehabilitation between now and the end of his sentence. *See United States v. Hill*, 2020 WL 2542725, at *3 (D. Conn. May 19, 2020) (holding that the "interests of rehabilitation are not advanced by [the inmate's] continued confinement" because "the restrictions imposed at FCI Danbury due to the COVID-19 crisis" left the inmate without "access to prison programs"). Finally, I am persuaded that Sturdivant's release plan—with support from his fiancé and mother, in particular—will set him up for success and will help ensure that the public is protected from further of Sturdivant's crimes.

### III.     Conclusion

For the foregoing reasons, Sturdivant's motion for release, doc. no. 1342, is **granted**. Sturdivant's motion to seal his medical records, doc. no. 1343, is **granted**. I reduce Sturdivant's sentence to time served, and he shall be immediately released from BOP custody.

Upon release, Sturdivant shall commence serving his five-year term of supervised release consistent with the conditions that Judge Eginton already imposed. *See* Judgment, Doc. No.

---

[8] Although the parties stipulated that Sturdivant had a firearm in furtherance of the conspiracy, the firearm was not part of the charged conduct to which Sturdivant pleaded guilty.

1077.  Sturdivant must contact the United States Probation Office as soon as possible, but in no event later than 72 hours after his release.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 23d day of November 2020.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge